IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JEFFRIE DREW, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:04-CV-0054 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
TO REVERSE THE COMMISSIONER'S DECISION
AND REMAND FOR FURTHER ADMINISTRATIVE ACTION**

Plaintiff JEFFRIE DREW, JR. brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security (Commissioner), denying plaintiff's application for supplemental security income (SSI) benefits. Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED and the case REMANDED for proceedings consistent with this opinion.

I.
PROCEEDINGS

On April 19, 2000,[1] plaintiff filed an application for SSI alleging he was disabled and that

---

[1] The stamp mark indicates a filing date of May 24, 2000, however, the record indicates a protective filing date of April 19, 2000.

such disability began on October 2, 1995.[2] (Tr. 53-54). As conditions limiting his ability to work, plaintiff listed "bad back, bad ankle, high blood pressure, [and] bad hearing in left ear." (Tr. 63). Plaintiff acknowledged he was able to continue working after his conditions first bothered him, but noted he worked "fewer hours because he could not stand up for long periods of time" and could not do mechanic work. Plaintiff averred he stopped working because of his back.

Plaintiff advised he completed the 10th grade, and identified past work as a cotton gin worker, gas station attendant, oil field worker, auto mechanic, and automobile detailer. (Tr. 64; 69). At the time he filed his application, plaintiff was 44-years-old.

The Social Security Administration denied benefits initially and upon reconsideration. On July 9, 2001, an administrative law judge (ALJ) conducted a hearing on plaintiff's application. (Tr. 238-73). On March 28, 2002, the ALJ rendered an unfavorable decision, finding plaintiff not disabled and not entitled to benefits at any time relevant to the decision. (Tr. 11-18). The ALJ determined, "based on the credible evidence of record," that plaintiff "suffers from lumbar radiculopathy and a ruptured intervertebral disc at the L5-S1 level of his spine." (Tr. 14). The ALJ further found that while "this impairment is severe, it does not singly or in combination meet or equal the level of severity of any impairment listed in Appendix 1, Subpart P, of Regulations No. 4." (Tr. 14).

The ALJ found the medical reports documented plaintiff's musculoskeletal problems, referencing several reports dated from 1999 through 2001. (Tr. 15). The ALJ then noted interrogatories answered by a consulting medical expert (ME), Dr. Jack Spencer, on November

---

[2]In a Disability Report, plaintiff alleged his condition first bothered him in September 1983, and that he became unable to work because of his disabling condition on June 1986. (Tr. 63).

14, 2001, summarizing the ME's answers as follows:

> Dr. Spencer states that claimant suffers from lower back pain on extension and lateral bending with a major neurological deficit, degenerative joint disease, and solid union of an old ankle fracture. Dr. Spencer explains in these interrogatories why, in his opinion , claimant's impairments do not meet *the level of severity set forth in section 1.05 of the listing of impairments found in Appendix 1*.

(emphasis added). The ALJ then found plaintiff's allegations of disabling pain and discomfort were not supported by the credible facts and findings. The ALJ found plaintiff had no side effects of medication resulting in an inability to work, and noted plaintiff's activities of daily living were not curtailed to such an extent that would suggest an inability to engage in all work activity. The ALJ acknowledged plaintiff experiences some pain and discomfort, but was not persuaded that such pain and discomfort was of such severity as to preclude plaintiff from engaging in all substantial gainful activity. (Tr. 15).

The ALJ, "based on the credible evidence of record," found plaintiff retains the residual functional capacity (RFC) to perform the "wide range" of work at the light exertional level. The ALJ explained plaintiff is precluded from performing a *full* range of light work due to his need to avoid more than occasional walking and his inability to climb a ladder, balance on a rail, or sit in a crouched position. Based on this RFC, the ALJ found plaintiff could not perform the duties of his past relevant work, "all of which required at least the ability to perform a full range of light exertional work activity." (Tr. 15).

The ALJ then noted the VE's hearing testimony that other jobs exist in significant numbers in the regional and national economies that are within plaintiff's RFC, to wit: the job of laundry folder, small product assembler, electronics worker, and cashier/checker. (Tr. 16). The ALJ noted that if he had found plaintiff could perform a *full* range of light work, the grid would have directed a conclusion that plaintiff was not disabled. However, as he found plaintiff could

not perform the full range of light work, the ALJ noted he could only use the grid as guidelines for determining the extent to which plaintiff's occupational base had eroded and whether there remained a significant number of jobs existing within the national economy which plaintiff could perform. The ALJ concluded:

> [C]onsidering the claimant's age, education, and prior working experience, the testimony of the vocational expert, and using Rules 202.13 and 202.14 as guidelines for decision making, that there are a significant number of jobs existing within the national economy which claimant can perform in spite of his impairments and their associated limitations.

The ALJ thus determined plaintiff was not under a disability at any time through the date of his decision. (Tr. 16).

Upon the Appeals Council's denial of plaintiff's request for review on February 6, 2004, the ALJ's determination that plaintiff was not under a disability became the final decision of the Commissioner. (Tr. 4-6). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

II.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's

subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

### III.
### ISSUES

Plaintiff's brief in support of his complaint presents the following issues for review:

1. The ALJ committed prejudicial legal error in finding plaintiff's impairment does not meet a Listing; and

2. The ALJ's finding that plaintiff has the RFC to perform a wide range of light work is not supported by substantial evidence.

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis. Therefore, this Court is limited to reviewing only whether there was substantial evidence on the record as a whole supporting a finding that plaintiff retained the ability to perform his past relevant work (PRW) and/or to perform other work that exists in

significant numbers in the regional and national economies, and whether the proper legal standards were applied in making this determination.

## IV.
## MERITS

The ALJ found plaintiff's back impairments did not meet or equal a listed impairment under Appendix 1 so as to be considered disabling.  In making this finding, however, the ALJ did not indicate the particular section under which he analyzed whether plaintiff's impairment met or equaled a listed impairment.  The ALJ did refer to Dr. Spencer's November 14, 2001 answers to interrogatories wherein the doctor explained why, in his opinion, plaintiff's impairments did not meet the level of severity set forth in *section 1.05* of the listing of impairments.[3]  (Tr. 15).  Plaintiff contends this reference to the ME's answers to interrogatories indicates the ALJ relied on the written answers of Dr. Spencer in determining plaintiff's back impairments did not meet or equal a listed impairment.  At the time Dr. Spencer answered the interrogatories on November 14, 2001, section 1.05C of the Listings was the appropriate section under which to analyze disorders of the spine.  Effective February 19, 2002, however, the musculoskeletal Listings were revised and the criteria for disorders of the spine were moved to subsection 1.04.[4]  As plaintiff's claim was pending as of the effective date of the new listings,

---

[3]Section 1.05C, *Disorders of the spine*, provided:

    C.      Other vertebrogenic disorders (e.g., herniated nucleus puplosus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months.  With both 1 and 2:

            1.      Pain, muscle spasm, and significant limitation of motion in the spine; and
            2.      Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

[4]Section 1.04C, *Disorders of the spine*, provided, as relevant here:

    (E.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc

and the ALJ had not yet rendered his decision, the ALJ should have considered plaintiff's impairment under the new listing. The ALJ's decision, issued March 28, 2002, over a month after the effective date of the new Listing, referenced only the superseded section 1.05C and did not acknowledge the new Listing 1.04C. Further, the Appeals Council's February 6, 2004 denial of plaintiff's request for review did not refer to the appropriate Listing, *i.e.,* 1.04C, under which plaintiff's impairment was to be analyzed. Plaintiff maintains that "given the revision of the Listings prior to the ALJ's decision, and the ALJ's and Appeals Council's failure to recognize the new listing, Defendant's decision should be vacated and this case should be remanded to Defendant for consideration as to whether Plaintiff's spinal impairment(s) meets or medically equals any of the impairments described in the current Sec. 1.04 of the Listings."

Plaintiff further argues this legal error (*i.e.*, applying the superseded Listing) committed by defendant was prejudicial to plaintiff because the available evidence indicates the appropriate Listing, Section 1.04C, would have been met as of June 2001. Specifically, plaintiff contends the medical evidence established (1) a diagnosis of lumbar spinal stenosis; (2) established by findings on appropriate medically acceptable imaging; (3) resulting in pseudoclaudication;[5] (4)

---

disease, facet arthritis, vertebral fracture(, resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

[5]"*Pseudoclaudication*, which may result from lumbar spinal stenosis, is manifested as pain and weakness, and may impair ambulation. Symptoms are usually bilateral, in the low back, buttocks, or thighs, although some individuals may experience only leg pain and, in a few cases, the leg pain may be unilateral. The pain generally does not follow a particular neuro-anatomical distribution, i.e., it is distinctly different from the radicular type of pain seen with a herniated intervertebral disc, is often of a dull, aching quality, which may be described as 'discomfort' or an 'unpleasant sensation,' or may be of even greater severity, usually in the low back and radiating into the buttocks region bilaterally. The pain is provoked by extension of the spine, as in walking or merely standing, but is reduced by leaning forward. The distance the individual has to walk before the pain comes on may vary. . . . 20 C.F.R. Part 404, Subpt. P, App. 1, sec. 1.00K.3.

manifested by chronic non-radicular pain and weakness; (5) resulting in inability to ambulate effectively as defined in 1.00B2b.  Plaintiff concludes the defendant's decision should thus be remanded for re-evaluation (with the aid of a ME) in relation to the current musculoskeletal Listings.

Defendant concedes Section 1.04C, rather than Section 1.05C, was the regulation in effect when the ALJ rendered his decision and when the Appeals Council denied review.  Defendant maintains, however, that "the ALJ and the Appeals Council reviewed Drew's claim under Section 1.04 of the listings after revision" because such section was in effect at the time of the ALJ's decision and the Appeals Council's denial of review.  Defendant cites the SSA policy that the "Commissioner expects Courts will review claims under standard effective when claim was administratively decided."  Defendant also notes the ALJ did not specifically address the criteria of Section 1.05C in his decision.  Although admitting the ALJ's decision also did not specifically address the criteria of Section 1.04C, defendant argues "the ALJ explicitly mentioned Drew's back disorder and thus, clearly analyzed Drew for disorders of the spine under Section 1.04C."  Defendant thus summarily concludes "the ALJ and the Appeals Council applied the requirements of the appropriate listing, Section 1.04C, the listing currently in effect at the time of their respective decisions, to determine that Drew did not meet the requirements of the listing."

There is absolutely no evidence of record indicating the ALJ or the Appeals Council applied Section 1.04C, the appropriate listing, in analyzing whether plaintiff's back disorders, singly or in combination, met or equaled the level of severity required by Section 1.04C.  In fact, the only indication as to which section was, in fact, applied was the ALJ's reference to Section 1.05C in his recitation of the ME's opinions in his responses to interrogatories.  Nothing in the

ALJ's decision indicates otherwise. The undersigned finds plaintiff has shown an error of law was committed by applying a regulation which had been superseded in reaching the decision denying plaintiff benefits.

Defendant next argues, in conclusory fashion, that the "perceived deficiency" that the ALJ utilized the incorrect regulation in analyzing whether plaintiff's back impairments met or equaled a listing "had no practical effect on the outcome of the case," did not affect plaintiff's "substantial rights," and does not warrant a remand. Defendant, however, makes no specific argument in support of his position that this error does not justify a remand for purposes of correcting the error and applying the proper Section.

Defendant further argues the medical evidence did not establish that plaintiff's back impairment met the new listing, Section 1.04C, and cites various medical records in support of his position. The medical evidence in the record, however, does not eliminate the possibility that plaintiff could be found to have a listed impairment. In point of fact, plaintiff has cited medical evidence supporting a determination in his favor at Step 3. Further, even if there is medical evidence negating a finding that plaintiff's condition met or equaled each of the criteria under the Listing set forth in Section 1.04C, no such determination was made at the administrative level and it would be rank speculation on the part of the undersigned as to what the ALJ would have actually determined had the appropriate listing been utilized during the evaluation of the severity of plaintiff's impairments at Step 3. Consequently, this case should be remanded for a proper analysis of plaintiff's back impairments under the criteria set forth in section 1.04C.

In his second ground, plaintiff argues the ALJ's finding that plaintiff has the RFC to perform a wide range of light work is not supported by substantial evidence because the RFC did

not include any limitations on the use of plaintiff's hands and arms.  Plaintiff points out his treating medical professionals prescribed the use of a wheeled walker on June 29, 2001 and on July 11, 2001 (Tr. 109, 233) and notes his testimony at the July 9, 2001 hearing that he had been using a walker for about three weeks and that he needed the walker because of dizziness due to high blood pressure and numbness in his left leg.  (Tr. 262-63).  Citing SSR 83-10, plaintiff notes the Administration has recognized light jobs generally "require the use of arms and hands to grasp and to hold and turn objects" and that "[t]he requirement to use a hand-held assistive device may []impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. Part 404, Subpt. P., App. 1, Sec. 1.00J.4.  Despite plaintiff's unrefuted prescribed use of a walker and the Administration's recognition that use of a hand-held assistive device may impact functional capacity, the ALJ did not make any accommodation in plaintiff's RFC for the use of a walker.  In fact, the ALJ did not make any reference to plaintiff's medically prescribed use of a walker or the effects thereof on plaintiff's ability to use his upper extremity.  Plaintiff thus contends the ALJ's RFC finding is not supported by substantial evidence and, in turn, his ultimate finding of non-disability is likewise unsupported by substantial evidence as it rests on VE testimony given in response to a hypothetical question which did not include plaintiff's use of a walker.

      Plaintiff's contention has substantial merit.  The undersigned finds that on remand, the ALJ shall directly address plaintiff's use of a walker and any effect such use may have on plaintiff's ability to perform light work, as well as any effect such use may have on plaintiff's ability to perform the jobs identified by the VE or any other work plaintiff is determined to be

able to perform despite his impairments.

## V.
## RECOMMENDATION

It is the RECOMMENDATION of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff JEFFRIE DREW, JR. not disabled and not entitled to a period of disability benefits be REVERSED as to the determination at Step 5 and the case be REMANDED for further administrative findings at Step 5.

## VI.
## INSTRUCTIONS FOR SERVICE

The District Clerk is directed to send a copy of this Report and Recommendation to plaintiff's attorney of record and to the Assistant United States Attorney by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 26th day of February 2007.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the file mark on the first page of this recommendation. Service is complete upon mailing, Fed. R. Civ. P. 5(b), and the parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is**

**filed**.  *See* 28 U.S.C.   § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).